1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL JOHN SCHULTZ,                      No.  2:15-cv-933-EFB

12              Plaintiff,

13       v.                                      ORDER

14    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

20    XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment.  For

21    the reasons that follow, plaintiff's motion is granted, the Commissioner's motion is denied, and

22    the matter is remanded for further proceedings.

23    I.     BACKGROUND

24        Plaintiff filed an application for SSI, alleging that he had been disabled since September 6,

25    2005.  Administrative Record ("AR") 145-152.  His application was denied initially and upon

26    reconsideration.  *Id.* at 88-91, 93-97.  On August 27, 2013, a hearing was held before

27    administrative law judge ("ALJ") Mary M. French.  *Id.* at 35-65.  Plaintiff was represented by

28    counsel at the hearing, at which he and a vocational expert ("VE") testified.  *Id.*

                                                  1

On January 10, 2014, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id.* at 19-30.  The ALJ made the following specific findings:

1.  The claimant has not engaged in substantial gainful activity since June 21, 2011, the application date (20 CFR 416.971 *et seq.*).

    * * *

2.  The claimant has the following severe impairments: bipolar disorder, not otherwise specified; Tourette's syndrome; attention deficit disorder; general anxiety disorder; and obsessive-compulsive disorder (20 CFR 416.920(c)).

    * * *

/////

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

   * * *

4. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand and carry out simple and some detailed but not complex instructions and can have no interaction with the general public, but is able to engage in occasional interaction with supervisors.

   * * *

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on May 5, 1983 and was 28 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can performed (20 CFR 416.969 and 416.969(a)).

   * * *

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 21, 2011, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 21-29.

Plaintiff's request for Appeals Council review was denied on February 27, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 973 (9th Cir. 2000);

/////

1    *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel,*

2    180 F.3d 1094, 1097 (9th Cir. 1999).

3            The findings of the Commissioner as to any fact, if supported by substantial evidence, are

4    conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

5    more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th

6    Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

7    conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

8    *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

9            "The ALJ is responsible for determining credibility, resolving conflicts in medical

10   testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

11   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

14   III.    ANALYSIS

15           Plaintiff argues that the ALJ erred in (1) weighing the medical opinion evidence of record

16   and (2) discrediting his testimony without providing clear and convincing reasons.  ECF No. 16 at

17   10-16.

18           A.    The ALJ Properly Weighed the Medical Opinion Evidence of Record

19           Plaintiff argues that the ALJ erred in rejecting the opinion of his treating physician in

20   favor of opinions from examining and non-examining physicians.  *Id*. at 13-16.  The weight given

21   to medical opinions depends in part on whether they are proffered by treating, examining, or non-

22   examining professionals.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  Ordinarily, more

23   weight is given to the opinion of a treating professional, who has a greater opportunity to know

24   and observe the patient as an individual.  *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir.

25   1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to

26   considering its source, the court considers whether (1) contradictory opinions are in the record;

27   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

28   treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81

4

1    F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

2    rejected for "specific and legitimate" reasons that are supported by substantial evidence.  *Id*. at

3    830.  While a treating professional's opinion generally is accorded superior weight, if it is

4    contradicted by a supported examining professional's opinion (e.g., supported by different

5    independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

6    1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

7    However, "[w]hen an examining physician relies on the same clinical findings as a treating

8    physician, but differs only in his or her conclusions, the conclusions of the examining physician

9    are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

10          On May 11, 2011, plaintiff's treating psychiatrist, Dr. Mitchel Galerkin, completed a

11    mental impairment questionnaire, indicating that he first treated plaintiff on February 8, 2011.

12    AR 235-240.  Dr. Galerkin diagnosed plaintiff with generalized anxiety disorder; Tourette's

13    disorder; obsessive-compulsive disorder; mood disorder, not otherwise specified; and opioid

14    dependence.  *Id*. at 235.  He also indicated that plaintiff had experienced four or more episodes of

15    decompensation within the last 12 months.  *Id*. at 239.  Dr. Galerkin's clinical findings included

16    agitation, rapid speech, depressed mood, anxiety, and lack of motivation and ambition.  *Id*. at 235.

17    Although he indicated that plaintiff's response to treatment had been fair to poor, Dr. Galerkin

18    believed plaintiff's long term prognosis was fair to good.  *Id*.

19          It was Dr. Galerkin's opinion that plaintiff was seriously limited, but not precluded, in

20    carrying out very short and simple instructions; maintaining attention for two hour segments;

21    sustaining an ordinary routine without special supervision; working in coordination with others

22    without being unduly distracted; and performing at a consistent pace without an unreasonable

23    number and length of rest periods.  Dr. Galerkin further opined that plaintiff was unable to

24    understand, remember, and carry out detailed instructions; maintain regular attendance and be

25    punctual within customary tolerance; complete a normal workday and workweek without

26    interruption from psychologically based symptoms; accept instructions and respond appropriately

27    to criticism from supervisors; get along with co-workers without getting distracted; interact

28    appropriately with the general public; respond appropriately to changes in a routine work setting;

1    and deal with normal work stress. *Id*. at 237-238. It was also his opinion that plaintiff's mental

2    impairments would cause him to miss between two to four days of work per month. *Id*. at 240.

3         In April 2012, plaintiff underwent a psychiatric evaluation, which was performed by Dr.

4    Kulwant Singh. AR 254-257. During the exam, plaintiff had adequate concentration and was

5    polite and cooperative, with average eye contact. *Id*. at 255. No involuntary movements were

6    observed, but plaintiff was hyperverbal, over hyper-talkative, and difficult to interrupt at times.

7    *Id*. at 255. Dr. Singh diagnosed plaintiff with bipolar disorder, not otherwise specified, rule out

8    substance related mood disorder. *Id*. at 256. It was his opinion that plaintiff could perform

9    simple and repetitive tasks, as well as detailed and complex tasks; accept instructions from

10   supervisors and interact with co-workers and the public; and perform work activities on a

11   consistent basis without special or additional instruction. He further opined that plaintiff may be

12   able to maintain regular attendance at the work place; complete the normal work day/work week

13   without interruption from psychiatric condition; and deal with the usual stress encountered in the

14   work place. *Id*.

15        The record also contains an opinion from Dr. Harvey Bilik, Psy.D., a non-examining

16   psychologist. Dr. Bilik opined that plaintiff was moderately limited in understanding,

17   remembering, and carrying out detailed instructions; maintaining attention and concentration for

18   extended periods; interacting appropriately with the general public, getting along with coworkers

19   without distracting them; responding appropriately to changes in the work setting; and completing

20   a normal workday and workweek without interruptions from psychologically based symptoms

21   and performing at a consistent pace without an unreasonable number and length of rest periods.

22   *Id*. at 81-83. He also opined that despite these moderate impairments, plaintiff could understand

23   and carry out simple and some detailed, but not complex, instructions; interact appropriately with

24   others, but would benefit from reduced interaction with the public; and could adapt to changes.

25   *Id*.

26        In assessing plaintiff's mental impairments, the ALJ gave little weight to Dr. Galerkin's

27   opinion, while giving great weight to Dr. Singh's opinion. *Id*. at 27-28. Because Dr. Galerkin's

28   /////

6

1    opinion was contradicted by Dr. Singh's opinion, the ALJ was required to give specific and

2    legitimate reasons for rejecting his opinion.  *Lester*, 81 F.3d at 830.

3         The ALJ explained that she gave little weight to Dr. Galerkin's opinion because it was

4    rendered shortly after he first started treating plaintiff and did not account for plaintiff's progress

5    with subsequent treatment.

6         Dr. Galerkin began treating plaintiff on February 8, 2011, and rendered his opinion on

7    May 11, 2011.  AR 235, 240.  In June, 2011, plaintiff reported that he was feeling better and

8    sleeping well.  *Id*. at 323.  Treatment notes from the following month showed that plaintiff was

9    cooperative, his speech was a normal rate, his mood was euthymic, he was goal directed, there

10   was no abnormal thought content, and his insight and judgment were intact.  *Id*. at 330.  The same

11   observations were made in September.  *Id*. at 332-333.  In November, plaintiff's mood, energy,

12   concentration, focus, and attention were stable.  *Id*. at 334.  In January 2013, plaintiff reported

13   that he had "been doing well. A lot better," and his anxiety medication was working.  *Id*. at 339.

14   Plaintiff was cooperative; he had good eye contact, normal psychomotor activity; his mood was

15   euthymic and his mood congruent.  *Id*. at 340.  His thought process was goal directed, organized,

16   logical, and linear; and his insight, judgment, memory, attention and concentration, and language

17   were intact.  *Id*.  Significantly, Dr. Galerkin indicated that plaintiff was "[a]ble to work."  *Id*. at

18   341.  Similar findings were documented in March, May and June 2013.  *Id*. at 344-365.

19        The ALJ's finding that plaintiff showed improvement after the date of Dr. Galerkin

20   provided his opinion is supported by substantial evidence and constituted a specific and legitimate

21   basis for rejecting his treating opinion.[2]  *See Cox v. Astrue*, 2012 WL 3862135, at *6-7 (D. Or.

22   Sept. 5, 2012) (the ALJ's finding that the physician's treatment notes show improvement after he

23   rendered his opinion was a specific and legitimate reasons for rejection of the opinion); *Rolston v.*

24   ────────────────

25        [2]  Plaintiff contends that the ALJ is not qualified to interpret plaintiff's treatment records
     because she is not a physician.  ECF No. 16 at 14.  The argument is not well taken.  Dr.

26   Galerkin's treatment records clearly showed that plaintiff exhibited improvement on exam.  As
     noted, the more recent treatment records documented plaintiff's own statements that he was

27   feeling better.  Further, beginning in January 2013, Dr. Galerkin noted that plaintiff is able to
     work.  AR 339-365.  No medical degree is required to appreciate that these records reflect an

28   improvement in plaintiff's mental condition.

1     *Astrue*, 298 F. App'x 661, 662 (9th Cir. 2008) (finding that the ALJ properly discounted a

2     treating physician's opinion where the claimant's condition improved after the opinion was

3     rendered).

4          The ALJ also noted that Dr. Galerkin's opinion stated that plaintiff had four or more

5     episodes of decompensation within a 12 month period, each lasting at least two weeks, but the

6     record is devoid of evidence of any decompensation.  AR 27-28.  The ALJ concluded that this

7     inconsistency suggested that Dr. Galerkin's opinion relied heavily on plaintiff's subjective

8     allegations.

9          The opinion of a treating physician may be rejected where it is premised primarily on

10    plaintiff's subjective complaints and the ALJ properly discounted plaintiff's credibility.

11    *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  However, "an ALJ does not provide

12    clear and convincing reasons for rejecting [a] physician's opinion by questioning the credibility of

13    the [plaintiff's] complaints where the doctor does not discredit those complaints and supports his

14    ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec. Admin*, 528 F.3d

15    1194, 1200-01 (9th Cir. 2008).

16         There is no dispute that Dr. Galerkin's statement that plaintiff had four or more episodes

17    of decompensation in a 12 month period is not supported by the medical records.  Furthermore, at

18    the time he made this statement he had only been treating plaintiff for three months, which

19    suggests that he had to rely on plaintiff's reports to determine how many episodes of

20    decompensation he had in a 12 month period.  Despite this inconsistency, Dr. Galerkin

21    specifically stated that the clinical findings supporting his opinion included agitation, rapid

22    speech, depressed mood, anxiety, and lack of motivation and ambition.  *Id*. at 235.  Thus, the

23    extent to which Dr. Galerkin may have relied on plaintiff's subjective allegations in forming his

24    opinion or relied on his own clinical findings is not clear.  On this record the court cannot find

25    that the ALJ's finding that Dr. Galerkin relied heavily on plaintiff's subjective allegations is not

26    supported by substantial evidence.  Further, in light of the ALJ finding that plaintiff's

27    impairments improved after Dr. Galerkin render his opinion, the court finds that the ALJ did not

28    err in rejecting his opinion.

1      Plaintiff also contends that the ALJ erred in relying on Dr. Singh's opinion because it was

2   equivocal.  ECF No. 16 at 15-16.  Dr. Singh opined that plaintiff "may be able to" perform a

3   variety of work functions, including accepting instructions from supervisors, interacting with co-

4   worker and the public, performing work activities on a consistent basis without special

5   supervision, and maintaining regular attendance.  AR 257.  The ALJ addressed plaintiff's

6   argument that Dr. Singh's opinion was vague or ambiguous because it used the term "may."   AR

7   27.  The ALJ concluded that "after reviewing the opinion, it appears that the doctor did not mean

8   that the claimant may or may not be able to do a particular activity, but instead meant he was

9   capable of doing such activity."  *Id*.  This is a fair reading of Dr. Singh's opinion and the ALJ

10   properly relied on it in assessing plaintiff's RFC.

11      B.   The ALJ Provided Legally Sufficient Reasons for Discounting Plaintiff's Credibility

12      Plaintiff also argues that the ALJ failed to give clear and convincing reasons for

13   discrediting his testimony.  ECF No. 16 at 10-12.

14      In evaluating whether subjective complaints are credible, the ALJ should first consider

15   objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

16   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

17   then may consider the nature of the symptoms alleged, including aggravating factors, medication,

18   treatment and functional restrictions.  *See id*. at 345–47.  The ALJ also may consider: (1) the

19   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

20   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

21   prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen v. Chater*, 80 F.3d

22   1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature,

23   severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

24   relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

25   treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

26   in determining whether the alleged associated pain is not a significant nonexertional impairment.

27   *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

28   on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir.

9

1   1989), which cannot substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6

2   (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

3   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

4   *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

5         Plaintiff testified that he begins a typical day by taking his medication and watching

6   television until his "med kick in and [he] feel[s] good."  AR 48.  He then will help out with

7   chores around the house, including doing the dishes, laundry, watering plants, and making dinner.

8   *Id*. at 48-49.  If he is feeling good and not depressed, he will try and contact his friends.  *Id*. at 49.

9   He also goes to the grocery store to get food for himself, plays video games.  However, he also

10  stated that on some days his depression keeps him from getting out of bed except to use the

11  bathroom and get water.  *Id*. at 56-57.  He testified that he had been diagnosed with Tourette

12  syndrome, which caused head tics and throat tics.  *Id*. at 43.  He also reported having difficulty

13  being around large crowds and focusing.  *Id*. at 51-52.

14        The ALJ gave two reasons for discounting plaintiff's credibility.  First, the ALJ

15  determined that plaintiff "described daily activities that are inconsistent with his allegations of

16  totally disabling symptoms and limitations, which weakens his credibility."  AR 25.  The ALJ

17  noted that plaintiff alleged that he experiences involuntary movements, depression, and anxiety,

18  but testified at the hearing that he goes to the grocery store, spends his days watching television,

19  and performing chores, including doing dishes, watering plants, and doing laundry.  *Id*.

20        An ALJ may consider activities of daily living in assessing a plaintiff's credibility.  *Burch*

21  *v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  "[I]f a claimant engages in numerous daily

22  activities involving skills that could be transferred to the workplace, the ALJ may discredit the

23  claimant's allegations upon making a specific findings related to those activities."  *Id*.  However,

24  the U.S. Court of Appeals for the Ninth Circuit has "repeatedly warned that ALJs must be

25  especially cautious concluding that daily activities are inconsistent with testimony . . ., because

26  impairments that would unquestionably preclude work and all the pressures of a workplace

27  environment will often be consistent with doing more than merely resting in bed all day."

28  *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  Thus, a plaintiff's daily activities have a

1   bearing on the plaintiff's credibility only where the level of activity is inconsistent with the

2   alleged limitations. *Id*.

3          Here, there is no apparent inconsistency with plaintiff's allegations that he experiences

4   involuntary movements (i.e. tics caused by Tourette syndrome), depression, and anxiety and his

5   ability to perform the activities identified by the ALJ.  Nor does the ALJ's decision provide any

6   explanation for the conclusion that plaintiff's alleged functional limitations are inconsistent with

7   the ability to watch television, complete limited chores, and go to the grocery store. *See Fair v.*

8   *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to

9   what may be the more grueling environment of the workplace, where it might be impossible to

10  periodically rest or take medication.").  Moreover, the limited home tasks identified by the

11  plaintiff do not demonstrate an ability to perform full-time work on a sustained basis.

12  Accordingly, the general finding, without explanation, does not constitute a clear and convincing

13  basis for discrediting plaintiff's specific testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487,

14  493 (9th Cir. 2015) ("General findings are insufficient; rather, the ALJ must identify what

15  testimony is not credible and what evidence undermines the claimant's complaint."); *Holohan v.*

16  *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]e ALJ must specifically identify the

17  testimony she or he finds not to be credible and must explain what evidence undermines the

18  testimony").[3]

19         The only other reason provided for discounting plaintiff's credibility was that his

20  allegations were inconsistent with the medical evidence of record.  AR 26.  Although the ALJ

21  may rely on an inconsistency with medical evidence in assessing plaintiff's credibility, that may

22  not be the sole basis for his credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th

23  Cir. 2005).  Thus, even assuming that substantial evidence supports the ALJ's finding that

24  plaintiff's allegations are inconsistent with the medical evidence of record, the court cannot

25  sustain the credibility finding on this basis alone.[4]

26         [3] Because the court finds that remand is necessary for further consideration of the medical
27  evidence, the court declines to address plaintiff's additional arguments.

28         [4] The Commissioner, apparently aware of the decision's deficiency, identifies

11

1      Accordingly, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's

2   subject complaints and the case must be remanded for further proceedings.

3      IV.      CONCLUSION

4        Accordingly, it is hereby ORDERED that:

5        1. Plaintiff's motion for summary judgment is granted;

6        2. The Commissioner's cross-motion for summary judgment is denied;

7        3.  The matter is remanded for further consideration consistent with this order; and

8        4. The Clerk is directed to enter judgment in plaintiff's favor.

9   DATED:  September 30, 2016.

10

11                                    EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22
     _____
     inconsistencies in the record that might support an adverse credibility finding.  The
23   Commissioner notes that plaintiff testified that he has difficulty in large crowds, but also testified
     that he attended a professional baseball game with his family.  ECF No. 17 at 17.  Although the
24   court agrees that such an inconsistency could support a finding that plaintiff was not fully
     credible, the ALJ did not discuss or rely on it in assessing plaintiff's credibility.  Therefore, it
25   cannot provide a basis for upholding the ALJ's decision. S*ee Bray v. Comm'r Soc. Sec. Admin.*,
     554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the
26   court] to review the ALJ's decision based on the reasoning and factual findings offered by the
     ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been
27   thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (a district court is
28   "constrained to review the reasons the ALJ asserts").

                                              12